Theodore Beshear is here for the appellant. David Rhodes is here for the government. And, Mr. Beshear, you may begin. Thank you, Your Honors. May it please the Court. Good morning. Good morning, Counsel. Application of these appeals is a question of statutory interpretation. The meaning of, to use any minor to engage in any sexually explicit conduct under 2251. And I'd like to emphasize two points. First, the plain grammatical reading of that phrase in the statute's context of the surrounding verbs, and the meaning that's consistent with the Supreme Court's interpretation of use in Bailey and the analogous decision by the Seventh Circuit in Howard, is that to use a minor to engage in sexual conduct means that the defendant took some action upon the minor to cause the minor to take part in the sexual images produced. And whether there's any doubt about that means the rule of lenity supports this grammatical reading. How do you respond to the point that, in a different part of the statutory chapter, Congress legislated that child pornography required visual depictions of a child, quote, engaging in sexually explicit conduct, but did not use that verbiage in 2251A? Yes, Your Honor. I think you really pointed out really what's at the heart of this case, which is the grammatical way in which the statute is written and the one we're looking at, and whether there's material differences between to engage in, engaging in, and other language used. So to answer that question, I think it's best to start with, first, what we're looking at in this statute in its grammar, and then to see whether the engaging in is enough of a material variation, and we'd contend that it's not. So the most important thing I think I can leave this court with is we're not just interpreting the phrase use or any of the verbs. We're interpreting the verb use with this adverbial prepositional phrase, as we're calling it, to engage in. The grammatical way to read that phrase, whether in this statute or in everyday English, is that you combine the use and the noun with this adverbial phrase. So when you're talking about to use a minor, it's the same way as you would say to coerce a minor to engage in. You're bringing the minor within that conduct. You're persuading. You're bringing. You're persuading. Otherwise, if we say use, some of the examples that we gave, if you use... But why can't you say use, like you can use a prop? I do think that that is a proper way to read it. That, I think, falls within somewhat of a factual question here. It wasn't argued below that the minors here are actually engaged in any form whatsoever in the sexual conduct. And this is actually a really critical point because I think there's some confusion in perhaps the way the briefing worked out. But the lower courts in both cases found that the sexual conduct here is the adult-only masturbation. So when we're going back now to Judge Branch, your question about the material difference, the grammatical way that we use to engage in, as I would say, to use a pen to engage in writing or I'm using this microphone to engage in an argument, I'm using it as an instrumentality, as a tool. And I'm using that in a way that's active. That's what Bailey talks about. But here you have... I'm going to try to be as ungraphic as possible. You're using a prop or you're using a child in order to do certain sexual acts. Not necessarily to the child, but the child is being used in order to do that particular sexual act. And I want to make sure I'm answering both questions. So the question here, because... And I think it is the most intellectually honest thing to say that you can, if we're looking at use and engage in separately, that is one way to read it. So I'd really have to emphasize that at the end of the day when we're looking at this case, this is a case where the role of validity, particularly with the difficulties of use. But this distinction between to engage in and engaging in is not the type of material variation because you cannot read to engage in that adverbial phrase. If you took coerce, it's modifying the same word. To coerce a minor to do, to persuade a minor to engage in. And Judge Lagoa, I just want to give one example that I think really highlights the problem with government's interpretation. Howard speaks to this where if use is described in such a way that we have any time a defendant, and again I will try to be as non-graphic as possible, but use as a object of sexual desire. There's no requirement at all that the minor even be depicted. You could have a minor thousands of miles away. You could even run into problems of fantasy. But that's not this case though. In one of the videos, his sexual object touches the child's hair. Yes, Judge Wilson. And I do think, again, because we're looking at two cases and different images, we want to look at each one. But what's important here, and I don't think we would be having this argument, if the finding below and the case was argued as an attempt to engage, as the Howard court says, or if it was described as that is the engagement. Now you do understand of course that Howard, the analysis in Howard conflicts with the analysis in the United States versus Lohr in the Eighth Circuit and the Third Circuit's analysis in the United States versus Finley. Well, Judge Wilson, I actually think, and I'm very glad you asked that because this is another point of confusion in this case that I want to be absolutely clear. I don't think there's any difference whatsoever between those decisions because they're either rejecting different arguments or making different arguments. And if I can take each case to be elusively clear, the Eighth Circuit's decision and Lohr's. First, their jury instructions in that case and the way that it was described actually requires the minor to be engaging. So that's consistent with our reading. And we've cited that in our reply brief. Second, that's a plain error case. We were just discussing before the difference of plain error. I believe the court described it as fly-by arguments. And to the extent the court in the Eighth Circuit says to the extent the argument here that there's no engagement, that was rejected as a mere presence case, different than what we have here. So that's a critical difference. The other absolutely critical difference is that case was a subset of case. Finley, the other case, and I think this actually really highlights the problem. And I want to get back to Judge Lagoa's point because it's worth emphasizing here. Finley, the argument was properly rejected by the Third Circuit is that the minor needs to be actively engaged, which is a totally different thing to say that the defendant has to actively use, active deployment. In fact, the use prong here has its most utility when we're dealing with... Why isn't the child actively engaged as a result of the child's presence? Because without the presence of the child, you can't create a sexually explicit video, can you? So there's two points to that. One, and where I was going with the use point, when we talk about using a minor to create this image and the interpretive question, all of those cases, I think this Court's Holmes decision gives use its biggest utility. When we talk about giving its independent meaning, to use a minor to engage in is where you freeze-frame, crop, lasciviously display the minor. So the engagement in that instance is now the lascivious exhibition. If you took the interpretation of you could not have created these images without the minor and we just have a minor's presence, there's no textual limitation at all when it comes to the minor. As Howard points out, the minor could be outside the screen at all. But isn't there a textual limitation that this statute is getting at behavior where the minor is in fact in the video, that the person is using the minor to engage in a sexually explicit activity depicting... I think you're absolutely right in the way that we read the statute. The way our opponents are reading the statute, that limitation is not there. And that was the critical point in the Howard decision. And I just want to give this example. Just take another one of the verbs now and modify it in the same way with persuade. So if you persuade under the government's interpretation, if you just needed the act and the sexual exploitation, if I persuaded a minor to walk my dog or go watch an iPad, go away, to then engage in adult-only interaction, there is no limitation. That would be criminal under their reading. Ask the government where the limitation comes. Because as the Seventh Circuit points out, textually speaking, only when you read the verbs, the active connotation, together with this natural grammatical reading of to engage in, do we have, when you coerce a minor, persuade a minor, use a minor, and in those instances you are now actively deploying or freeze-framing, cropping, doing something to the minor to get the minor to engage in the activity. Well, doesn't the statute provide the limitation that the Seventh Circuit suggested that there were no limits, that you could have a child, you know, I don't know, in another house that was causing the person to masturbate? But why is the statutory language not more limiting than what the Seventh Circuit suggested, that the person is using a child, if the child is just sitting there, not engaging in the sexual conduct, but is using a child, because the offender is masturbating to the mere presence of the child, using a child in sexually explicit conduct for the purpose of producing any visual depiction of such conduct? Why doesn't the statute provide that limit that you're saying doesn't exist by the child has to be in the video? I see my time is up, if I may answer that question. The statute's limitation, if we read it that way, if we look at it, there's no requirement that the child then be for the purpose of producing the visual image of such conduct, because such conduct, in that instance, is an adult-only masturbation. So again, if we take the use, I could use a minor to go shopping, and then for the purpose of, that's how the interpretation of the engagement here really is, so I can engage in adult-only masturbation and film it, and again, I apologize for the graphicness, but for the purpose of producing. So in the way the elements are laid out, the use to engage in, coerce to engage in, that's a single element of the effects. And that's really what the Howard Court, both in the argument and in the briefing, really zoned in on, because there is no textual limitation. I would concede if that was there, that if the statute was written such that the minor is depicted as a sexual object, we would have a different case. And really going back to the original question, the difference between such minor and to engage in, this court and other courts have found, when Congress wants to use expansive language, they could have written the statute to say involving a minor, or they could have written the statute as state statutes have a lascivious exhibition. But if you just read the statute, whether it's use, whether it's coercion, because again, if I, you know, you're just using a common example of, you know, Was the rule of lenity raised in the district court? In Mr. Poole's case, yes. In Mr. Dawson's case, the court relied on the same principles. Are you arguing Dawson too? I do think we... Why don't we just do it together? Yes. So in both cases, we're relying on the same statutory principles. The single case the government has cited for the rule of lenity not applying is to a guidelines interpretation, which I do think presents different limitations. Here, the Kniff decision, the second panel decision, relying on rule of lenity is, I think, a very strong outline on the interpreter problem. Because once again, as the Bailey Court points out, use presents complications. I think we have the best reading, but at the end of the day, if the court finds it could be read both ways, the rule of lenity really counsels in favor of excluding this interpretation. Would you like to say more about Dawson? You pretty much made your argument with regard to Dawson. We've consolidated these cases for appeal. Yes, Your Honor. I think in both cases, facts are a little different. The facts are different. And I think in Paolo, I would contend Paolo is a clear case of non-engagement whatsoever. But if we do look at both, and I think we were very careful in making sure about this, the findings in both cases and why these are even argued as stipulated facts trials is because sexual explicit conduct is adult-only masturbation. It doesn't present the problems Your Honor was speaking about of a factual question of engagement. Because again, it's really the exact questions that, and I think it's the exact right questions. The argument here in both cases from the government is that there was a use of a minor as a sexual object, etc., subjectively, to engage in. And the real question is, now, does this statute mean that we have to take the minor to engage in, in the use, or is it these two separate things? And again, I would really just emphasize to the extent it could be read both ways, the Kniff decision really, in a similar type of statutory interpretation in a child pornography case, really counsels in favor of our reading. And that's what we're really talking about, because our reading brings that adverbial phrase, the prepositional phrase, into account. That's where the limitation comes in from the engaging end. And our reading comports with the Bailey decision of active employment. And Bailey is very clear about use can be, they use the paradoxical sentence of, I use a gun to protect my house, thank God I have not had to use it. Pointing out that use can be an extremely broad term. So when we apply it in terms of statutory construction, and I don't think I've emphasized the no-sitter canon as much, but the no-sitter canon here really points to use being this active deployment. And the last thing I want to say, the Holmes decision, I think, gives us the real meaning of why use is in the statute, giving it independent meaning. Holmes tells us when we use a minor unaware, what we're doing is we're lasciviously explaining, sexually exploiting the minor in a particular type of way where they're unaware, freeze-framing, cropping otherwise. Just the mere picture of a minor, the same way that it wouldn't be a lascivious exhibition, wouldn't be a use to engage in. So they go hand-in-hand. Thank you, counsel. Mr. Rhodes for the government. Thank you, Your Honor. May it please the court. I first want to just point out a few things about what my opposing counsel just said. First, the suggestion that this might have been an attempt crime, and it's been charged as an attempt crime, then we might have a different situation here. That's not. Maybe they're looking for a way to justify the failure to apply this action to this conduct, but this isn't an attempt case. These defendants did exactly what they intended to do. There was nothing else that they were trying to do, but what they did satisfies the statute. Mr. Rhodes, would the statute be satisfied if the defendant in his own home is looking out his window and across the way he sees the house next door and there's a child in it and he videotapes himself masturbating? No. No, Your Honor. Explain to me how the statute doesn't capture that. Because in that situation, he's not using the child to engage in sexually explicit conduct with intent to create a visual depiction of that conduct. That's not a reasonable interpretation of the term used and not a reasonable interpretation of using the child to engage in this conduct. I feel like I can safely say there has never been a case charged like that, and I think I can safely say there would never be a case charged like that. Keep in mind the statute is designed to protect against the sexual exploitation of children. And you look at the words in the statute. What if, let's just create another hypothetical. What if the child is not in the video in this case? The child's there in the room and he's masturbating while looking at the child by the door, but the child is not in the video itself? Do we have a violation of the statute? That's a closed case, Your Honor. I don't think we would have a violation there either. I still think you would need to have the child engaged in the, I mean, it obviously depends on how you view engaged in the sexually explicit conduct. Because the sexually explicit conduct here, there's nothing wrong with what the district courts found here. The sexually explicit conduct is the defendant's conduct. It's masturbation specifically included, lascivious exhibition of the genitalia, that's specifically included, and it says of any person. So the fact that the child is not the one who is, I guess, lasciviously displayed or doing any of the other things set out in there, that's not the deciding factor. So the fact that the district courts found that doesn't mean these children didn't engage in this sexually explicit conduct. Can I ask you a question? Because your opposing counsel seems to suggest that if the child or the minor is not actively participating or not engaged in, that it somehow doesn't meet the statutory requirements. What about a child who is unaware, i.e., they're asleep, they're drugged, they're intoxicated, and the adult is doing sexual masturbating in the room with the child in the video, but the child is asleep? We'd be in the same situation, Your Honor, because he is using that child to engage in. The child doesn't have to be aware of what's going on. That's why we have these, unfortunately, sleeping child cases, unconscious child cases. We have cases involving infants who aren't even cognitively capable of being, if you look at the words in the statute, persuading, coercing, inducing, those are sort of the ones, the verbs, that require kind of affirmative acts between the defendant and the child. And then we have use, and I would put probably employ in the same category, which those are the ones that cover a broader array of sexual exploitation of a child. And that's what we have here. You have those cases, unfortunately, and Congress has said, if you use a child, you don't have to do those affirmative acts, and there'll be some cases where you wouldn't even be able to do those affirmative acts. So we still have that here. So in this case, when we're looking at the sufficiency of the evidence before the court, we have the use of these children, and you know what's in the videos, and you know what's in the photographs in this case, where the defendants are, in the videos, panning from the child down to himself, back and forth, and the other ones where the defendant is splayed out on the bed with the five-year-old child looking directly at him, he is using that child, and he is engaging and using the child for the child to engage in that sexually explicit conduct. And if the depictions were not enough to establish that, you look at what the defendants were saying in their little chat groups as they were talking to people. It was obvious the whole reason, and this is what Judge Wilson was bringing up for, the whole reason for these depictions existing was because of the children's involvement, participation in these acts. And that's what they were telling people, and they both admitted it when they talked to law enforcement after the fact. So this isn't a fantasy child. It's not an inspiration child. I don't think we would be here in that case. I don't think we'd have an indictment in that case, but it would be a very different sufficiency of the evidence case if we were there. If we had gone through the decision to indict, and the denial of a motion to dismiss the indictment, and a guilty verdict, and the denial of a Rule 29 motion, and then we might be here if we went through all those hoops, which I don't think would ever happen. But here, where we have no question about sexually explicit conduct, we have no question about for the purpose of creating a visual depiction of that conduct, where we have, in our view, no question about the use of that child for purposes of this, and in our view, we have no question but that the child was engaged in that sexually explicit conduct. It's not a child inadvertently shown in another room watching TV. I'm not going to go into, you know what the details of these incidents were. These children were integral parts of these. Mr. Dawson admitted to the agents when they were interviewing him that he did this to incorporate the child into the visual depictions that he was created. So, I mean, the Court doesn't need to decide, in our view, where, say, the Rule of Lenity fits in here, because this is, it's not grievously ambiguous, in our view, not ambiguous at all, that the conduct covered by these depictions, the defendant's conduct, satisfies the statute. What's wrong with the Seventh Circuit's decision in United States v. Howard? A few things, Your Honor, are wrong with it. One, I think, if you read through the opinion, the Court determined that the United States was conceding that the child was not engaged in the sexually explicit conduct with the defendant. And that was wrong, in our view, but there were some comments made at oral argument that, I'm not saying it was an absurd interpretation of the government's position, but I think it was an incorrect interpretation of the government's position, and that led the Court down the road to sort of distancing the child's participation in it from the crime itself, and I think that's why you have the examples that they use of using a child down the street as inspiration, and our view of the statute is different from that, and we don't think that would be covered by it, but I think once you do that, you're inching closer to that broader interpretation, or I guess a narrower interpretation of the statute, so we think that's just wrong, and I think that interpretation, the other problem with it, the other main problem with that opinion is, in attempting to view that whole series of verbs together, they sort of minimize the difference between use and probably employ, and the other verbs, because the other ones are the ones that require affirmative acts toward the child to get them to participate in the sexual activity, so there's no reason to sort of give a stilted interpretation of the word use, just because the other words in that list are more narrow verbs or types of conduct that are also covered by it, so I think for both of those reasons, the court was wrong, and the Laos decision, which obviously is a little different, but when you're talking about a sleeping child, I mean, that child, I think under the Seventh Circuit's view of it, I'm not sure you could say that that defendant in Laos used the child to engage in, I mean, the child's obviously not affirmatively doing anything in that case, so if you're going to take an extremely narrow interpretation of those broad words, use and employ, and in the process, probably eliminate a substantial segment of sexual exploitation conduct that results in visual depictions being shared with other people, I think you should avoid that, if you can, instead of embracing that, and I think that's partly where the Howard court went wrong. Well, even the use of the verb entice doesn't necessarily mean that the child is the one engaging in that verb. I mean, it could be the adult who is enticing the child by candy or some other favor to engage in the sexual behavior, and so I'm not sure it's a correct reading of those other verbs as well. Right. I agree. So unless the court has any more questions, thank you. All right. Thank you, Mr. Rhodes. Mr. Bashir, you've reserved some time for rebuttal. Thank you, Your Honor. Just a few brief points, but I want to begin, Judge Zola, just with a clarification, because we are not arguing, and I want to be absolutely clear, that the minor needs to be aware of or actively participating in the conduct, meaning that they are doing, know that they're being graphic. In fact, just the opposite is true, because, again, like the Holmes decision. So the minors here are passively engaged rather than actively engaged. They're still engaged. So that actually goes to my second point, which I, and I wanted to make sure I have the citations for the court here. So in Mr. Paolo's case, document 50 on page 17, and I'll preface this by saying there is absolutely no finding that the minors are engaged in the sexual conduct here of masturbation. That is absolutely not true, because if it was true, I think we would have a different case. So with all due respect, I think. Well, the minor is the object of the defendant's desire. Yes. And that goes back to Judge Branch's point, because if that much is true, then there is no textual limitation if the minor is across the street. But there's a big difference between the minor across the street, because a minor across the street doesn't know that someone's masturbating to them. The child that's in the room who is the object of the sexual desire is being subjected to an adult masturbating in front of them. And that's why we reject the awareness framework, because then we would have a problem in Mr. Dawson's case. The record is unfortunately, but absolutely clear that the minor was completely unaware of any of the sexual conduct. And the Bailey decision really makes that point of what a use means, that this isn't a statute about whether the minor is aware. Because I agree with my opponent here that whether a minor is an infant or cognitively aware, that's not the test. The test is what Judge Branch here is absolutely talking about. It is the text. And if you really look at the text If you use, if I say I'm going to use that cup in this picture, okay, that's a use, proper usage of that word, use. There I take a picture. I have used that cup in my picture. Well, two points to that. One, it's the part of this statute that we're talking about, to produce a visual depiction of such conduct. That's the interpretation. So it does not say a visual depiction of such conduct that includes the minor. So when you're using the same cup example, I can also, a correct usage is saying I use the cup to take a picture of something totally different. Because I use the cup as my inspiration to take a picture of something else. And it's the same thing with the enticement example your honor was just bringing up. I can entice a minor, like in my other examples, I can entice the minor to go be distracted. That's a proper usage. I've enticed them, I've given them candy, or I've given them a dollar to go to a vending machine. To now, to engage in my own act for the purpose of producing an image of that act. Under the government's interpretation. But here you have the minor is in the video or the picture with the individual and it's being spliced back and forth. So clearly the intent is not just for the individual making it, but also for the distribution to others. Yes your honor, but the problem again, and that's only in some, when we look at the gradation of the images that we're talking about here. We have span from Mr. Paolo's image to, those are stipulated facts, they appear to be looking in some of the photos. And in other instances we have, in Mr. Dawson's case, either talking or splicing and I think in one of the images, the minor's barely in the photos themselves. Bailey tells us that if we're, the line of use is, that was exactly what the Bailey court overturned, was this proximity standard. That's not what active deployment looks like. What we really need to look at is did you say any action? And this is where I was going to go back to the arguments here about where employee and use are somehow in a different category or there's not active deployment. Well, before you go back to that, and I think you may be misunderstanding my earlier question, I am asking you to tell me why the limit that the text appears to employ isn't damaging to your case. Because the text says, if you've used a minor to engage in any sexually explicit conduct, and here's the language I'm honing in on, for the purpose of producing any visual depiction of such conduct, why does the, for the purpose of producing any visual depiction of such conduct not necessarily refer back to not only the act of masturbation, but the use of the child? I see you there and my time is up if I can answer that. Please. So the, grammatically, what is being modified there, does not refer back to the use of the actual visual depiction of the minor. What's being modified is for the purpose of producing such conduct. The conduct is the masturbation. So textually, and I want to make sure. Why is the conduct not the masturbation while using a child? I don't believe grammatically goes that far because it says for the sexually explicit conduct for the purpose, now we have a break of an intent for the purpose of producing any visual depiction of such conduct. So grammatically what we are producing is of such conduct. That's why the Seventh Circuit, I believe correctly said, there is no textual limitation because all you need to show, and these are all these examples that I've subjectively or otherwise used the minor for the purpose, the intent is to produce an image of such conduct. The conduct, that's key. Conduct here is the sexually explicit, any sexually explicit conduct. That such conduct is referring back to the sexually explicit conduct. That's the grammatical link. I guess what I'm asking you is why does sexually explicit conduct refer to the defendant masturbating? Why does it not refer to the defendant masturbating to the child's presence? So two points. One, I'll go back to the rule of limiting the intended honor. It's unconvinced with the grammatical because I think if we're, if the argument here is it could be read both ways. But the best reading, the nearest preferred canon, I think comes into play here because when we're talking about the conduct here, the last use of the conduct was the sexually explicit conduct and not the overall conduct of the use. So if we use that canon, I believe Scalia-Garner refers to the nearest referred canon of grammatical points. But to the extent your honor is unconvinced, again I would go back to the fact that I think we can fairly say the statute can be read the both directions. And the problem here is when it can be read in both directions, as the Kniff decision points out, it is hard to ignore that when we have all of these verbs, and just to conclude on that point, it's critical here too when the government is pointing out, well, employee and use are separate.  In fact, if we were to use the superfluity canon, employee could be given a secondary meaning of paying, entice, otherwise. The better way to read this statute is, as the no-sitter canon tells us, when we have a cluster of verbs, that we try to find some commonality. And considering the Supreme Court has told us the plain meaning of use connotes active deployment, there would need to be some textual indication that this statute is looking for a different type of use, this inspirational use that we're talking about. And since we've been, I think we've been here 25, 30 minutes searching far and wide of where there could be a textual limitation of the minor being a negative use. Again, and I will conclude on this point, that when we're asking statutory interpretation questions, the question is not whether the government may or may not charge. Because I think experience tells us, you know, despite my admiration for my colleagues, the good faith of the United States is not a reason to take a word at what the text of a statute would say. But otherwise, this is actually, unfortunately, a very common scenario when we're dealing with enticement cases, distribution cases. We oftentimes have instances where defendants, unfortunately, engage in their own masturbation by using, in their mind, or as a sexual object, a child. And to suggest as whether it's a plea bargain bait, or otherwise, this would not be charged. Well, we have cases from this circuit, the 7th Circuit, the 3rd Circuit, and the 11th Circuit. So I would implore this Court, this is exactly why we have the rule of lenity, where we have a close call, where we go through the interpretive canons, where we exhaust these rules. And the argument can go both ways. The rule of lenity really counsels in favor. And the Kniff decision, I think, is an excellent way this Court can resolve this case. So if there's no further questions, thank you very much. All right. Thank you, Counsel. The last one. Thank you.